IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA B. LYONS and ELAINE RUTH LEE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>JPMORGAN CHASE BANK, N.A.<br><br>        Defendant.<br>_____/ | No. C 10-5166 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Docket No. 24) |

   Plaintiffs Laura B. Lyons and Elaine Ruth Lee charge Defendant JPMorgan Chase Bank, N.A., with violations of California common and statutory law in connection with Option Adjustable Rate Mortgages (OARMs) they obtained from Washington Mutual Bank.  Chase moves to dismiss their complaint.  Plaintiffs oppose the motion.  The motion was taken under submission on the papers.  Having considered the papers submitted by the parties, the Court GRANTS Chase's motion.

                              BACKGROUND

   According to the complaint, on or about March 9, 2005, Lyons obtained an OARM from Washington Mutual.  On or about July 21, 2005, Lee obtained an OARM from Washington Mutual.  Plaintiffs allege that Washington Mutual breached their loan agreements by applying their monthly payments only to accrued interest and not to principal.  They also allege that Washington Mutual treated their loans as negative amortization loans and charged an interest rate higher than what was promised.  On September 25, 2008, the Office of Thrift Supervision closed Washington Mutual and the Federal

Deposit Insurance Corporation (FDIC) was appointed as receiver. Plaintiffs plead that, after Chase purchased Washington Mutual's OARMs on September 25, 2008, Chase administered their loans in the same way.

Plaintiffs point to several provisions in their loan agreements that they assert embodied a promise to apply their monthly payments to both interest and principal. First, they cite Paragraph 3(A) of the Adjustable Rate Note, which states

> I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment. . . .
>
> I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal.

Compl., Ex. 1 ¶ 3(A).[1]

Second, Plaintiffs cite Paragraph 4(A) of the Note, which governed the amount their regular monthly payment could change on an annual basis during the first five years of their loans. Paragraph 4(A) provided that their regular monthly loan payment could not change more than seven-and-a-half percent of the amount they had been paying previously. The limit applied "only to the principal payment" and did not apply "to any escrow payments" that might have been required. Id. Ex. 1 ¶ 4(F) and Ex. 2 ¶ 4(F).

Finally, Plaintiffs cite Paragraph 7(A) of the Note, which

---

[1] Exhibit 1 and Exhibit 2 contain documents related to Lyons's and Lee's loans. To the extent that the two exhibits contain identical language, the Court cites only Lyons's documents, contained in Exhibit 1.

2

provides that, if their monthly payment is late, they will be charged five percent of their "overdue payment of Principal and interest." Id. Ex. 1 ¶ 7(A) and Ex. 2 ¶ 7(A).

On November 15, 2010, Plaintiffs brought this lawsuit, asserting claims for breach of contract; violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, et seq.; and unjust enrichment. Plaintiffs also seek declaratory relief.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request

3

1  to amend the pleading was made, unless amendment would be futile.
2  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
3  F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
4  would be futile, the court examines whether the complaint could be
5  amended to cure the defect requiring dismissal "without
6  contradicting any of the allegations of [the] original complaint."
7  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

Chase argues that Plaintiffs' action must be dismissed based on the Purchase and Assumption Agreement (P&A Agreement) it entered into with the FDIC to purchase Washington Mutual's assets.  Even if the P&A Agreement does not bar Plaintiffs' action, Chase argues, Plaintiffs fail to state sufficiently any of their claims.

I.  Effect of P&A Agreement

The P&A Agreement between Chase and the FDIC provides,

> [A]ny liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

Chase's Request for Judicial Notice (RJN),[2] Ex. 3 § 2.5.  Based on

---

[2] Chase asks the Court to take judicial notice of documents related to Plaintiffs' loans and its acquisition of the assets of Washington Mutual.  Plaintiffs do not oppose this request.  Because the documents contain facts "capable of accurate and ready

4

1 this provision, courts have held that the FDIC, not Chase, is the
2 real party in interest concerning borrowers' claims arising from
3 Washington Mutual's conduct with regard to their loans. See, e.g.,
4 Yeomalakis v. FDIC, 562 F.3d 56, 60 (1st Cir. 2009); Hilton v.
5 Wash. Mut. Bank, 2009 WL 3485953, at *2-*3 (N.D. Cal.).

6 Here, Plaintiffs' claims are based on Chase's treatment of
7 their monthly payments after it acquired their loans from
8 Washington Mutual on September 25, 2008. Unlike the plaintiffs in
9 Newbeck v. Washington Mutual Bank, Case No. C 09-1599 CW,
10 Plaintiffs here do not bring claims against Chase for Washington
11 Mutual's conduct.

12 Accordingly, the P&A Agreement does not require dismissal of
13 Plaintiffs' action.

## II. Breach of Contract Claims

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach. Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004). "The character of a contract is not to be determined by isolating any single clause or group of clauses." Transp. Guarantee Co. v. Jellins, 29 Cal. 2d 242, 247 (1946). Instead, the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably

---

determination by resort to sources whose accuracy cannot reasonably be questioned," the Court grants Chase's request. Fed. R. Evid. 201(b).

practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

Plaintiffs' breach of contract claims are based on Chase's alleged failure to apply their regular monthly payments to both principal and interest.[3] However, Plaintiffs fail to identify any contractual language that created an express or implied promise to allocate their regular monthly payments to both principal and interest. Plaintiffs cite Paragraph 3(A) of the Adjustable Rate Note, which requires them to "pay Principal and interest by making payments every month." Compl., Ex. 1 ¶ 3(A) and Ex. 2 ¶ 3(A). However, numerous courts, including this one, have already rejected the argument that this language embodies an implied promise to apply a borrower's regular monthly payments to principal and interest.[4] See, e.g., Plascencia, 583 F. Supp. 2d at 1100-01; Jones-Boyle v. Wash. Mut. Bank, FA, 2010 WL 2724287, *12 (N.D. Cal.). The Note states that each "monthly payment will be applied to interest before Principal," Compl., Ex. 1 ¶ 3(A), and that "my

---

[3] Plaintiffs also allege that Chase treated their mortgages as negative amortization loans and charged an interest rate higher than what they were promised. These allegations, however, either pertain to Plaintiffs' assertion that Chase misapplied their regular monthly payments or a claim for fraud based on Washington Mutual's conduct, which cannot be asserted against Chase. Indeed, Plaintiffs' opposition focuses primarily on Chase's alleged misapplication of their regular monthly payments.

[4] This is not to say that such language could not be considered confusing and seemingly contradictory, thereby potentially supporting a claim for fraud. See Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1099-01 (N.D. Cal. 2008). However, Chase was not Plaintiffs' original lender and they do not allege Chase made these statements. Further, under the P&A Agreement, Plaintiffs cannot hold Chase liable for Washington Mutual's conduct regarding their loans.

6

monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full," Id. ¶ 4(G). In addition, the Note states, "For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and ad [sic] the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate." Id. These provisions indicate that regular monthly payments will not be applied to both principal and interest in circumstances in which the interest owed is equal to or greater than the amount of a borrower's regular monthly payment.

    Plaintiffs cite other sections of the Note, none of which, when read together with the rest of the agreement, create an implied promise to allocate regular monthly payments to principal and interest. They cite another portion of Paragraph 3(A) of the Note, which defines "payments" to mean "Principal and interest payments only." Compl., Ex. 1 ¶ 3(A). However, this definition is intended to distinguish between payments toward principal and interest and payments for "taxes, insurance and/or late charges." Id. This definition does not contain an implied promise regarding how Plaintiffs' regular monthly payments will be applied.

    Plaintiffs also point to the Note's provision imposing a five-percent charge for late payments, which applies to a borrower's "overdue payment of Principal and interest." Compl., Ex. 1 ¶ 7(A). However, that Chase will impose a five-percent penalty if a

7

borrower's payment is late does not suggest that Chase will apply a borrower's regular monthly payments to principal and interest.

Finally, Plaintiffs cite language in the Note and the Adjustable Rate Rider attached to their deeds of trust, which states that, for the first five years of their loans, their regular monthly payment amount could change no more than seven-and-a-half percent on an annual basis. As noted above, the limit applied "only to the principal payment" portion of their monthly payments and did not apply "to any escrow payments" that might have been required. Compl, Ex. 1 ¶ 4(F). However, that the principal payment could be increased seven-and-a-half percent per year does not mean that Chase was required to apply Plaintiffs' regular monthly payments to principal and interest. Other provisions of the Note recited above provide that a regular monthly payment was applied first to interest and then to principal, and that the payment made may not be sufficient to reduce both interest and principal. Thus, even if the principal payment amount increased, if a borrower's regular monthly payment was not sufficient to cover the interest due that month, no portion of the borrower's monthly payment would be applied to principal.

Plaintiffs argue that, because extrinsic evidence supports their belief that their loan agreements required Chase to apply their payments to principal and interest, Chase's motion to dismiss must be denied. In evaluating the meaning of disputed contract language, under California law, courts "must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning."

8

Wolf v. Superior Court, 114 Cal. App. 4th 1343, 1350-51 (2004); see also Trident Center v. Conn. Gen. Life Ins. Co., 847 F.2d 564, 568-69 (9th Cir. 1988). However, the alleged extrinsic evidence Plaintiffs cite is not relevant. They allege that Washington Mutual's Master Loan Application "reflected an interest rate -- typically between 1% and 3% -- and a loan term -- typically 360 months." Compl. ¶ 19. This alleged extrinsic evidence does not suggest that Plaintiffs' regular monthly payments would be applied to both principal and interest. Plaintiffs do not plead that Washington Mutual's Master Loan Application indicated that the one- to three-percent interest rate would be applied for the life of the loan. Indeed, the interest rate charged on Lyons's and Lee's loans could increase up to 10.660 percent and 9.950 percent respectively. Compl. Ex. 1 ¶ 4(D) and Ex. 2 ¶ 4(D).

Plaintiffs also allege that, because Chase has not found them to be in default, their monthly payments must have covered both principal and interest. Plaintiffs cite Paragraph 7(B), which states that Chase will find them in default if they do not make their regular monthly payments, and Paragraph 3(A), which defines "payments" to refer to "Principal and interest payments only" and not "taxes, insurance and/or late charges." However, this argument relies on finding an implied promise in Paragraph 3(A) to apply payments to principal and interest, which was rejected above. Thus, Plaintiffs' alleged extrinsic evidence does not require denying Chase's motion to dismiss.

Plaintiffs have not identified a provision of their loan agreements that Chase has breached. Accordingly, their claims for

9

breach of contract are dismissed with leave to amend to plead a breach.

III. UCL Claims

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). Claims under the UCL must be brought "within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208.

Chase contends that Plaintiffs' UCL claims are time-barred. However, these claims are based on Chase's conduct after it acquired Plaintiffs' loans from Washington Mutual on September 25, 2008. As noted above, Plaintiffs initiated this lawsuit on November 15, 2010, within four years from the date of Chase's purchase.

Although they are not time-barred, Plaintiffs' UCL claims are not cognizable. The claims are based on Chase's purported failure to apply Plaintiffs' regular monthly payments to both principal and interest. Plaintiffs maintain that Chase violated the unlawful

10

prong of the UCL by breaching its contractual obligations to them. They assert that Chase violated the unfair prong by asserting a contractual right it did not possess, namely the right to apply Plaintiffs' monthly payments to interest only and not to principal. Neither theory is viable. As noted above, Plaintiffs have not stated a claim for breach of contract against Chase. Further, the Note provides that Chase may apply their regular monthly payments solely to interest, which could cause their loans to amortize negatively.

Accordingly, Plaintiffs' UCL claims are dismissed with leave to amend to plead a violation of the UCL.

IV. Unjust Enrichment Claims

California courts appear to be split on whether there is an independent cause of action for unjust enrichment. Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (applying California law). One view is that unjust enrichment is not a cause of action, or even a remedy, but rather a general principle underlying various legal doctrines and remedies. McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004). In McBride, the court construed a "purported" unjust enrichment claim as a cause of action seeking restitution. Id. There are at least two potential bases for a cause of action seeking restitution: (1) an alternative to breach of contract damages when the parties had a contract which was procured by fraud or is unenforceable for some reason; and (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct and the plaintiff chooses not to sue in tort but to seek restitution on

11

a quasi-contract theory. Id. at 388. In the latter case, the law implies a contract, or quasi-contract, without regard to the parties' intent, to avoid unjust enrichment. Id.

Another view is that there is a cause of action for unjust enrichment and its elements are receipt of a benefit and unjust retention of the benefit at the expense of another. Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000); First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657, 1662-63 (1992).

Plaintiffs' unjust enrichment claims are also based on Chase's purported breach of its obligation to apply their payments to interest and principal. Even if unjust enrichment were a viable cause of action in California, Plaintiffs have failed to state such a claim for the reasons stated above.

V. Declaratory Judgment

Plaintiffs seek declaratory relief based on their theory that Chase has misapplied their regular monthly payments. However, as already explained, Plaintiffs have not demonstrated that Chase's application of their regular monthly payments contravened any contractual obligation associated with their loans. Accordingly, Plaintiffs' claim for a declaratory judgment is dismissed with leave to amend.

CONCLUSION

For the foregoing reasons, the Court GRANTS Chase's motion to dismiss. (Docket No. 24.) Plaintiffs' claims are dismissed with leave to amend to plead conduct by Chase that breached a contractual obligation associated with their loans, violated the UCL, led to Chase's unjust enrichment and justifies declaratory

12

relief.

Plaintiffs shall file their amended complaint fourteen days from the date of this Order. If Plaintiffs file an amended complaint, Chase shall answer or move to dismiss twenty-one days after it is filed. Plaintiffs shall file an opposition fourteen days after Chase files a motion to dismiss. Any reply, if necessary, shall be due seven days after Plaintiffs file their opposition. Any motion to dismiss will be taken under submission on the papers.

The initial case management conference, currently set for August 23, 2011, is continued to October 4, 2011 at 2:00 p.m.

IT IS SO ORDERED.

Dated: 7/12/2011

CLAUDIA WILKEN
United States District Judge